UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**SCOTT SMITH KING**  **CASE NO. 3:21-CV-00225**

**VERSUS**  **JUDGE TERRY A. DOUGHTY**

**PETSMART L L C**  **MAG. JUDGE KAYLA D. MCCLUSKY**

**MEMORANDUM RULING**

Pending before the Court is PetSmart, LLC's Motion for Summary Judgment [Doc. No. 35] filed by Defendant, PetSmart, LLC ("PetSmart" or "Defendant"). Plaintiff, Scott Smith King ("King" or "Plaintiff"), filed a Memorandum in Opposition to Motion for Summary Judgment [Doc. No. 38], and Defendant filed a Reply [Doc. No. 39] to the opposition.

For the reasons set forth herein, PetSmart's Motion for Summary Judgment is **GRANTED.**

**I.  FACTS AND PROCEDURAL BACKGROUND**

This case arises out of a slip-and-fall incident at PetSmart in Monroe, Louisiana, on or about January 8, 2020.[1] King stopped at PetSmart with Sandra King ("Mrs. King"), Lesley Gonzales ("Gonzales"), and Daniel Damuth ("Damuth").[2] After he used the restroom, King met Mrs. King at the front of the store near the cash registers.[3]

A floor mat was placed at the entrance in front of the doors.[4] The floor mat had rubber edges and a carpeted portion.[5] King and Mrs. King allegedly decided to leave the store and wait for Damuth and Gonzales in their car.[6] As King was leaving, he stepped onto the floor mat with

---

[1] [Doc. No. 1-1, p. 3]. King stated in his opposition that he fell on January 9, 2020. However, the Court will use the original date in the complaint for purposes of this motion.
[2] [Doc. No. 35-11, ¶ 1].
[3] [Doc. No. 35-11, ¶ 2].
[4] [Doc. No. 35-3].
[5] [Doc. No. 38-1].
[6] [Doc. No. 35-11, ¶ 2].

his right foot.[7] When his left foot came into contact with the mat, he fell forward and stumbled into the automatic entrance doors.[8] King alleges he tripped because a corner of the carpeted portion of the floor mat had separated from the rubber corner, creating a raised "dog ear" that caught his foot.[9] PetSmart alleges King tripped because his left foot kicked the side of the floor mat as he stepped onto the floor mat.[10] Surveillance footage captured the slip-and-fall incident.[11] This footage captures the floor mat from above.[12] Mrs. King also took a photo of the floor mat a few minutes after the incident took place.[13] King, Mrs. King, Gonzales, and Damuth did not see a curled-up corner of the mat prior to King's fall.[14]

At the time of the incident, Sherry Tullos ("Tullos") was working as a cashier at the front register, and Amanda Smith ("Smith") was working as an assistant store leader and manager on duty that day.[15] Tullos allegedly vacuumed and visually inspected the floor mat that morning before the store opened.[16] She stated in her affidavit that she "did not see any tears, holes, raised corners, or raised edges on that floor mat at any time before King's fall."[17] Smith allegedly walked past and observed the floor mat multiple times that morning and in the months prior to the accident.[18] She also stated in her affidavit that she did not observe "any wrinkles or raised edges that could pose a tripping hazard" prior to King's fall.[19]

---

[7] [Doc. No. 35-3, 0:4:55-05:10].
[8] [Doc. No. 35-3, 0:4:55-05:10].
[9] [Doc. No. 38, p. 1-2].
[10] [Doc. No. 35-11, ¶ 6].
[11] [Doc. No. 35-3].
[12] [Doc. No. 35-3].
[13] [Doc. No. 38-1].
[14] [Doc. No. 35-7, Sandra King Depo, p. 29, 2-5]; [Doc. No. 35-9, Daniel Damuth Depo, p. 17, 4-17]; [Doc. No. 35-9, Daniel Damuth Depo, p. 17, 18-21; p. 19, 25, p. 20, 1-18]; [Doc. No. 35-2, Scott Smith King Depo, p. 85, 11-19; p. 88, 1-5]; [Doc. No. 35-8, Lesley Gonzales Depo, p. 47, 1-17].
[15] [Doc. No. 35-5, ¶ 2]; [Doc. No. 35-6, ¶ 2].
[16] [Doc. No. 35-5, ¶ 3].
[17] [Doc. No. 35-5, ¶ 3].
[18] [Doc. No. 35-6, ¶ 4].
[19] [Doc. No. 35-6, ¶ 4].

In its Motion, PetSmart maintains that King cannot prove that (1) the floor mat presented an unreasonable risk of harm, (2) PetSmart had constructive notice that the floor mat presented an unreasonable risk of harm, and (3) PetSmart did not exercise reasonable care.[20]

The issues have been briefed, and the Court is prepared to rule.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Under FED. R. CIV. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 56(c)(1). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (*citing Anderson*, 477 U.S. at 248). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable

---

[20] [Doc. No. 35-1, p. 9].

3

inferences in its favor. *Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated." *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (citations omitted).

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). No genuine dispute as to a material exists when a party fails "to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### B. Louisiana Merchant Liability Act R.S. 9:2800.6

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. King asserts that his cause of action for "allowing a defective carpeted door mat on the floor" is governed by La. R.S. 9:2800.6.[21] He then asserts that "Louisiana Civil Code articles 2317 and 2317.1 are the principal law applicable to [his] other claims."[22]

La. R.S. 9:2800.6 "governs negligence claims brought against merchants for accidents caused by a condition existing on or in the merchant's premises." *Davis v. Cheema, Inc*., 171 So. 3d 984, 988 (La. App. 4 Cir. 5/22/15). This act states:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable

---

[21] [Doc. No. 38, p. 2-3].
[22] [Doc. No. 38, p. 7].

> effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care. La. R.S. 9:2800.6.

La. R.S. 9:2800.6 further provides that nothing in the statute "shall affect any liability which a merchant may have under Civil Code Arts. … 2317." La. R.S. 9:2800.6 is thus not an exclusive theory of liability for claims against a merchant, and a plaintiff may have separate claims under both La. R.S. 9:2800.6 and La. C.C. Art. 2317.1.

In interpreting these statutes, Louisiana courts have explicitly held that La. R.S. 9:2800.6 encompasses "negligence claim[s] brought against a merchant … for … an injury … sustained because of a fall due to a condition existing in or on [the defendant] merchant's premises … and the application of any other law [is] reversible error." *Roberts v. Hartford Fire Ins. Co.*, 926 So. 2d 121, 123 (La. App. 3 Cir. 4/5/06), *writ denied*, 930 So. 2d 984 (La. 6/23/06) (internal citations omitted). *See also Guidry v. Murphy Oil USA, Inc.*, No. CV 14-00223-BAJ-SCR, 2015 WL 5177569, *1, *4 (M.D. La. Sept. 3, 2015) (noting that "Louisiana courts … have held that La. R.S. § 9:2800.6 governs a cause of action against merchants for a fall on the premises—to the exclusion of La. C.C. art. 2317.1"); *Brown v. Wal-Mart Louisiana LLC*, No. CIV.A. 10-1402, 2012 WL 3109785, *1, *6 (W.D. La. July 27, 2012); *Caldwell v. Wal-Mart Stores Inc*, No. CV 17-00904, 2018 WL 1386635, *1, *2 (W.D. La. Mar. 19, 2018).

5

In this case, King pled various negligence claims.[23] These claims arise out of injuries he sustained because he tripped and fell on an allegedly defective floor mat in PetSmart.[24] Even though King argues in part that the floor mat is defective, the supposed defect is still a "condition" of a merchant's premises, and this condition allegedly caused King to fall and sustain injuries. King's injuries thus arise from a trip and fall. Because La. R.S. 9:2800.6 governs trip and fall cases, that statute, and not La. C.C. Art. 2317.1, applies.

La. R.S. 9:2800.6 requires the plaintiff to prove: (1) a condition existed that presented an unreasonable risk of harm and that risk of harm was reasonably foreseeable; (2) the merchant either created the condition or had actual or constructive notice of the condition; and (3) the merchant failed to exercise reasonable care. If the plaintiff fails to prove any one of those three elements, the merchant is not liable. *White v. Wal-Mart Stores, Inc.*, 699 So. 2d 1081, 1084 (La. 9/9/97). Accordingly, a genuine dispute as to material fact must exist for each of these elements for King's claims to survive summary judgment.

In its Motion, Defendant maintains that Plaintiff cannot prove that (1) the floor mat presented an unreasonable risk of harm that caused his injury, (2) PetSmart had constructive notice that the floor mat presented an unreasonable risk of harm, and (3) PetSmart did not exercise reasonable care.[25] Ultimately, the Court agrees. Plaintiff cannot prove the floor mat presented an unreasonable risk of harm. Alternatively, even assuming the floor mat did present an unreasonable risk of harm, Plaintiff cannot prove Defendant created the condition or had actual or constructive

---

[23] [Doc. No. 1-1]. Even though King states in his complaint that he has brought negligence, fault, and / or strict liability claims, strict liability does not attach to this type of suit. *See Jeansonne v. S. Cent. Bell Tel. Co.*, 8 So. 3d 613 619 (La. App. 5 Cir. 1/13/09) (stating that "[w]ith the addition of the requirement to show actual or constructive knowledge in order to impose liability under LSA–C.C. art. 2317.1, the Legislature has effectively turned strict liability into negligence claims"); *Dickerson v. Winn-Dixie, Inc*., 816 So. 2d 315, 317 (La. App. 1 Cir. 2/27/02), *writ denied*, 817 So. 2d 99 (La. 5/31/02). Accordingly, his complaint contains only negligence claims.
[24] [Doc. No. 1-1].
[25] [Doc. No. 35-1, p. 9].

6

notice of this condition. Finally, even assuming *arguendo* that King has satisfied the requirements under the first two elements, the Court further finds that King cannot establish PetSmart failed to act with reasonable care. Accordingly, and for the reasons set forth below, PetSmart's motion is **GRANTED**.

### 1. Unreasonable Risk of Harm

In its Motion, PetSmart maintains that no genuine dispute of material fact exists as to whether the floor mat presented an unreasonable risk of harm because King cannot show that a dangerous condition existed prior to his fall.[26] King argues that "[t]he carpet portion of the carpeted door mat had separated from the rubber portion … causing a loose 'dog ear' … where [his] foot came in contact with the mat."[27] King further asserts that "[d]ue to the defective condition of the mat, as [his] foot became caught on the 'dog eared' portion of the carpet, [he] lost his balance" and fell.[28]

This element requires that the plaintiff prove that a condition presented an unreasonable risk of harm and that such condition caused the injury. Necessarily, then, this element includes a temporal element because a condition cannot cause an injury if it does not exist prior to the accident. A plaintiff cannot rely on mere speculation or possibility alone to demonstrate that a condition existed prior to their fall and that such condition caused their injury. *See Alexander v. Hancock Bank*, 212 So. 3d 713, 718 (La. App. 4 Cir. 2/8/17) (stating that "[p]roof which establishes only possibility, speculation, or unsupported probability does not suffice to establish a claim").

In *Jones v. Brookshire Grocery Co.*, 847 So. 2d 43, 46 (La. App. 2 Cir. 5/14/03), the plaintiff stumbled and fell as she crossed a floor mat that was adjacent to the exit door of the store.

---

[26] [Doc. No. 35-1, p. 9].
[27] [Doc. No. 38, p. 1].
[28] [Doc. No. 38, p. 1].

As she stood up, she noticed "that her right foot was caught in a wrinkle or buckle at the edge of the mat." *Id*. She had felt something "grab her foot" before she fell, but she did not see a wrinkle or buckle prior to her fall. *Id*. at 47. The Louisiana Supreme Court affirmed the trial court's finding that "plaintiff did not prove the existence of a wrinkle." *Id*. at 50. *See also Alexander*, 212 So. 3d at 718 (finding the plaintiff's testimony that she saw a lip in the rug after she fell to be insufficient to show the existence of an unreasonably dangerous condition); *Rhodes v. Whataburger Restaurants, LP*, No. CIV.A. 11-0552, 2012 WL 1100671, *1, *3-*4 (W.D. La. Apr. 2, 2012) (finding that the plaintiff did not establish the existence of a dangerous condition because her son "never saw a wrinkle or fold in the mat before his mother fell"). Here, like with the plaintiff in *Jones*, King's evidence ultimately fails to demonstrate the existence of a dangerous or negligent condition prior to his fall.

In his incident report, King claims that "[a]s I was exiting the store I tripped on the edge of the carpet and fell."[29] Two exhibits demonstrate the condition of the floor mat in this case. PetSmart submitted a surveillance video that provides footage of the area before, during, and after the incident.[30] This footage captures the floor mat from several feet above. A review of this footage does not show that the corner of the floor mat was, at any time prior to, during, or after King's fall, curled up. King also submitted this post-incident photograph of the floor mat:

---

[29] [Doc. No. 35-10, p. 2].
[30] [Doc. No. 35-3].



King, Mrs. King, Damuth, and Gonzales all stated in their affidavits that this photograph accurately depicted the condition of the floor mat at the time of the fall.[32] Mrs. King attested that she "personally took a photograph of the carpet mat immediately after the incident."[33] Gonzales and Damuth both declared that they "personally observed the carpet mat at the front door within minutes [of the fall], and the carpet portion … had separated from the rubber portion on the corner of the mat, causing a loose 'dog ear.'"[34]

On the day of the incident, Tullos was working as a cashier in the area where King tripped and fell.[35] She stated in her affidavit that the floor mat at issue here had been located in that spot "for several months … and no other customers tripped on it."[36] The morning of the incident, she vacuumed the floor mat.[37] She "did not see any tears, holes, raised corners, or raised edges on that floor mat at any time before King's fall."[38] After King's fall, King initially informed her that "he did not know what happened."[39] She reviewed King's incident report and then inspected the floor

---

[31] [Doc. No. 38-1].
[32] [Doc. Nos. 38-2, ¶ 5; 38-3, ¶ 5; 38-4, ¶ 5; and 38-5, ¶ 4].
[33] [Doc. No. 38-3, ¶ 5].
[34] [Doc. No. 38-5, ¶ 3]; [Doc. No. 38-4, ¶ 3].
[35] [Doc. No. 35-5, ¶ 2].
[36] [Doc. No. 35-5, ¶ 3].
[37] [Doc. No. 35-5, ¶ 3].
[38] [Doc. No. 35-5, ¶ 3].
[39] [Doc. No. 35-5, ¶ 2].

9

mat, stating that "it appeared to be in good condition. I did not see any tears, holes, raised corners, or raised edges that could have posed a potential hazard to Mr. King or any other customers."[40] She further stated that PetSmart did not change the floor mat "immediately after Mr. King's fall" because it was still in good condition.[41] Smith was the manager on duty at PetSmart on the day King fell.[42] When she learned King had fallen, she helped him fill out an incident report and offered to call an ambulance.[43] She stated in her affidavit that she had "walked over the same floor mat for several months before and after Mr. King fell and never noticed any wrinkles or raised edges that could pose a tripping hazard."[44] She stated that no other customers had tripped on that floor mat.[45]

King alleges he tripped on a dog-eared or curled corner of the floor mat, but he has only presented evidence of the floor mat's condition *after* his fall to support this claim. As was the case in *Jones*, King, Mrs. King, Gonzales, and Damuth did not see a curled-up corner of the mat prior to King's fall.[46] Further, King's post-incident photograph, which King, Mrs. King, Gonzales, and Damuth all declared accurately depicted the floor mat when King fell, does not demonstrate that the floor mat was curled up.[47] While the photograph does appear to indicate that the corner had begun to separate, it does not establish that this area could lift or curl. PetSmart employees, Tullos and Smith, also attested that the corner of the floor mat had not curled up or separated both before and after King's fall.

---

[40] [Doc. No. 35-5, ¶ 4].
[41] [Doc. No. 35-5, ¶ 4].
[42] [Doc. No. 35-6, ¶ 2].
[43] [Doc. No. 35-6, ¶ 3].
[44] [Doc. No. 35-6, ¶ 4].
[45] [Doc. No. 35-6, ¶ 4].
[46] [Doc. No. 35-7, Sandra King Depo, p. 29, 2-5]; [Doc. No. 35-9, Daniel Damuth Depo, p. 17, 4-17]; [Doc. No. 35-9, Daniel Damuth Depo, p. 17, 18-21; p. 19, 25, p. 20, 1-18]; [Doc. No. 35-2, Scott Smith King Depo, p. 85, 11-19; p. 88, 1-5]; [Doc. No. 35-8, Lesley Gonzales Depo, p. 47, 1-17].
[47] The Court notes that these individuals all claim that a loose dog-ear existed in their affidavits, yet the photograph does not demonstrate that dog ear. Because the objective photographic evidence does not show this dog ear, and because each of these individuals all attested that this photograph was an accurate depiction, the Court finds that the photograph itself, and not their individual characterizations of the floor mat, control.

In sum, the totality of the evidence does not indicate that the corner of the floor mat had curled up or dog-eared. Instead, such evidence demonstrates that, while the floor mat may have been a bit worn, the corner was not curled. To surmise that the floor mat curled up would require the Court to rely on King's own unsupported, conclusory allegations that he did, in fact, trip on a curled-up corner of the floor mat. This the Court cannot do so. *See Alexander*, 212 So. 3d at 718. King has thus not shown that there exists a genuine dispute as to the existence of a dangerous or negligent condition that caused his injury. Accordingly, PetSmart is entitled to summary judgment on this issue.

### 2. Actual or Constructive Notice

Assuming *arguendo* that the floor mat did present an unreasonable risk of harm in its condition, the Court now turns to whether PetSmart had actual or constructive notice. In its Motion, Defendant maintains that Plaintiff cannot prove PetSmart had constructive notice that the floor mat presented an unreasonable risk of harm.[48] King urges that a genuine dispute as to material fact exists as to whether PetSmart "employees had actual or constructive knowledge of this defective mat, which had been in its current state for 'such a period of time' that it had become worn and … delaminated."[49] At the outset, the Court notes King has not pointed to any facts in the record which demonstrate PetSmart had actual notice of the alleged defect. Nor has the Court found any indicia of actual notice in its own independent review of the record. Accordingly, King must demonstrate the existence of constructive notice to survive summary judgment on this element. The Court ultimately agrees with PetSmart, finding that King cannot prove PetSmart had constructive notice of the condition of the floor mat.

La. R.S. 9:2800.6(C)(1) defines constructive notice as follows:

---

[48] [Doc. No. 35-1, p. 9].
[49] [Doc. No. 38, p. 7].

11

> "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition."

Louisiana courts have consistently held that "constructive notice is plainly defined to include a mandatory temporal element." *White*, 699 So. 2d at 1082. A court cannot infer the existence of constructive notice "absent some showing of this temporal element. The claimant must make a positive showing of the existence of the condition prior to the fall." *Id*. at 1084. This positive showing must demonstrate "that the damage-causing condition existed for some period of time, and that such time was sufficient to place the merchant defendant on notice." *Id*. at 1082. Courts have not imposed a "bright line time period", and the determination of whether a time period is sufficient to discover a condition is inherently factual. *Id*. at 1084. However, the plaintiff must still "prove the condition existed for some time period prior to the fall" to survive summary judgment. *Id*. at 1084-85.

In *Jones*, the Louisiana Supreme Court affirmed the trial court's determination that the plaintiff did not establish constructive notice. *Jones*, 847 So. 2d at 50. As discussed above, the plaintiff alleged she tripped because of a wrinkle in the rug. *Id*. at 46. However, the plaintiff did not see any wrinkle in the rug before she fell. *Id*. at 51. Nor did any employees or customers see a wrinkle before her fall. *Id*. Accordingly, the trial court found the plaintiff could not establish constructive notice because she did not present any evidence "concerning the length of time the wrinkle, if any, had existed prior to the fall." *Id*. at 52.

Similarly, in *Babin v. Winn-Dixie Louisiana, Inc*., 764 So. 2d 37, 40 (La. 6/30/00), the Louisiana Supreme Court found that the plaintiff's evidence consisted only of speculation, and he could not make the required positive showing for constructive notice. The plaintiff in this case

12

alleged he slipped on toothpick boxes. *Id*. at 38. The defendant presented evidence that its employee inspected the area approximately ten minutes before the plaintiff fell and did not observe any toothpick boxes at that time. *Id*. at 40. The Louisiana Supreme Court ultimately held that, "[d]espite his speculation that the condition may have existed for some time period prior to his fall, plaintiff is clearly unable to make a positive showing." *Id*. at 40. *See also Robinson v. Brookshires #26*, 769 So. 2d 639, 642 (La. App. 2 Cir. 8/25/00) (stating that "[w]hat Babin appears to require of a plaintiff … is to come forth with evidence that shows how long the condition existed before the accident").

Further, in *Rhodes*, 2012 WL 1100671 at *5, the district court found that the plaintiff's post-incident photograph and witness observations of the mat following the slip and fall were insufficient to establish constructive notice. In this case, the plaintiff alleged she fell because she tripped on ripples in a rug. *Id*. at *1. The plaintiff presented her son's testimony that he observed ripples after she fell. *Id*. at *6. Based on this observation, her son surmised that the rug must have been defective before his mother's fall. *Id*. at *6. The plaintiff also submitted a photograph taken twenty months after the incident that demonstrated a defective condition of the rug. *Id*. at *5. Additional evidence indicated "that there were no issues, problems or complaints regarding the mat prior to Rhodes's fall. *Id*. at *6. Ultimately, the court held that the plaintiff failed to satisfy her burden of proving constructive notice. *Id*. at *6.

Courts do allow plaintiffs to rely on circumstantial evidence in some cases. *Sheffie v. Wal-Mart Louisiana LLC*, 134 So. 3d 80, 84 (La. App. 5 Cir. 2/26/14), *writ denied*, 141 So. 3d 813 (La. 6/20/14). For example, in *Sheffie*, the defendant did not dispute that water was present in the area where plaintiff fell. *Id*. at 82. Instead, the defendant urged that the plaintiff could not establish that the defendant had notice of the water prior to the plaintiff's fall. *Id*. The plaintiff presented a

twenty-two-minute surveillance video to establish constructive notice. *Id*. at 84. This video did not show liquid being spilled at any point. *Id*. Additionally, five employees walked by the area "and did not appear to look for any hazardous conditions as trained." *Id*. The Louisiana Supreme Court ultimately decided that this video created a genuine dispute as to constructive notice. *Id. See also Beggs v. Harrah's New Orleans Casino*, 158 So. 3d 917, 923-24 (La. App. 4 Cir. 1/21/15) (finding that numerous statements regarding the presence of water in the hours before the fall and the lack of evidence regarding any clean-up constituted sufficient circumstantial evidence of constructive notice); *Bagley v. Albertsons, Inc*., 492 F.3d 328, 331 (5th Cir. 2007) (finding that the "size and nature of the spill demonstrate that some period of time passed before Bagley's accident. She has presented sufficient evidence to survive summary judgment on the issue of constructive notice").

Here, King has not made a positive showing that the damage-causing condition (i.e., the curled-up corner of the floor mat) existed for some period of time prior to his fall. King's evidence consists of (1) his own statement that he tripped on the dog-eared corner, (2) a photograph taken after the incident, and (3) statements from witnesses who observed the floor mat after the incident. This photograph does indicate the corner had begun to separate, but it does not establish that the floor mat was in this condition prior to his fall. Further, as discussed above, this photograph does not demonstrate that the floor mat had, in fact, curled up. None of King's witnesses can attest to the condition of the floor mat before King's fall. Conversely, PetSmart has presented testimony from Tullos that she saw the floor mat on the day of the incident and did not find any curled or torn edges. No evidence indicates that any customers or employees reported any problems with the floor mat. Thus, like the plaintiffs in *Jones* and *Babin*, King relies solely on after-the-fact evidence to establish constructive notice of an allegedly negligent or dangerous condition of the

floor mat. And, while the photograph here was taken closer in time to King's incident than the one in *Rhodes*, this photograph still does not establish the existence of a curled or dog-eared edge.

Further, King has not produced any circumstantial evidence that would allow for an inference of constructive notice. In *Sheffie*, the defendant admitted to the existence of water in the area where the plaintiff fell, and the surveillance footage established both that employees were in the area and the water had been spilled prior to the beginning of the footage. *Sheffie,* 134 So. 3d at 82-84. Similarly, in *Beggs*, numerous witnesses attested to the presence of water before the plaintiff's fall. *Beggs*, 158 So. 3d at 923-24. Conversely, no witnesses in this case can attest to the condition of the floor mat before King's fall, and PetSmart has not conceded that the floor mat had a curled or dog-eared edge before King's fall. These cases are thus not analogous to the case at bar. Nor does the "nature" of this floor mat demonstrate the condition existed for some time as was the case in *Bagley*. As discussed above, while the photograph does appear to indicate that the corner had begun to separate, it does not establish that this area could lift or curl up. King has thus not presented any "circumstantial evidence" from which a factfinder could reasonably infer PetSmart had constructive notice.

In sum, King has presented no evidence as to the length of time the allegedly curled or dog-eared edge of the floor mat existed. Thus, he cannot establish that PetSmart had constructive notice. Accordingly, PetSmart is entitled to summary judgment on this issue.

### 3. Reasonable Care

Assuming *arguendo* that King has satisfied the requirements under the first two elements, the Court further finds that King cannot establish reasonable care. In its Motion, PetSmart maintains that it exercised reasonable care because it followed its appearance and safety protocols

and that such protocols were commensurate with the requirements of reasonable care.[50] King asserts that PetSmart "failed to exercise reasonable care in failing to have a sufficient safety and inspection procedure, failed to exercise due care, and failed to remove and / or replace the mat especially since it had been in use 'for such a period of time' that it had become worn … and delaminated."[51]

"Merchants are required to exercise reasonable care to protect those who enter the establishment, to keep the premises safe from unreasonable risks of harm, and to warn person of known dangers." *Bertaut v. Corral Gulfsouth, Inc.*, 209 So. 3d 352, 357 (La. App. 5 Cir. 12/21/16). "Store owners are not required to insure against all accidents that occur on the premises. They are not absolutely liable whenever an accident happens." *Jackson v. Delchamps, Inc.*, 691 So. 2d 332, 335 (La. App. 1 Cir. 3/27/97), *writ denied*, 695 So. 2d 977 (La. 6/13/97). Instead, a merchant is only required to "insure that the premises are kept free from substances that might cause a customer to fall." *Id*. at 335. In determining whether a protective measure is reasonable, courts consider "commensurate with the risk involved, the merchant's type and volume of merchandise, the type of display, the floor space utilized for customer service, the volume of business, the time of day, the section of the store, and other considerations." *Id*.

King urges that PetSmart's safety protocols are insufficient and a failure of due care. Here, PetSmart submitted evidence that its cashiers were required to, as part of their morning duties, vacuum the floor mats.[52] On the morning of the incident, Tullos followed this procedure and vacuumed the floor mat at issue here. At that time, she did not observe "any tears, holes, raised corners, or raised edges."[53] King has not offered any evidence that disputes Tullos's claim.

---

[50] [Doc. No. 35-1, p. 15-16].
[51] [Doc. No. 38, p. 7].
[52] [Doc. No. 35-5, ¶ 3].
[53] [Doc. No. 35-5, ¶ 3].

The Court finds that PetSmart exercised reasonable care. It had a procedure in place for its employees to maintain the floor mats at the front of the store, and its employees complied with that procedure. A floor mat is not an item that is inherently dangerous, and, in fact, the failure to use a floor mat in highly trafficked areas can be unreasonable. Nothing suggests that the nature of this floor mat was risky such that PetSmart needed to immediately replace it. No other customers tripped on this floor mat in the months before King's accident, and, even after King's fall, PetSmart continued to use this floor mat with no incidents. It does not appear, then, that PetSmart failed to exercise reasonable care. Rather, the evidence demonstrates that PetSmart had procedures in place, such procedures routinely prevented other customers in the store from being harmed, and that PetSmart followed those procedures on the day King fell. King has not shown that PetSmart failed to exercise reasonable care, so PetSmart is entitled to summary judgment.

### III. CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED, ADJUDGED, AND DECREED** that PetSmart, LLC's Motion for Summary Judgment [Doc. No. 35] is **GRANTED**, and Plaintiff's claims against it are hereby **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 16th day of November 2023.

_____
**TERRY A. DOUGHTY
UNITED STATES DISTRICT**